## ASSIGNMENT

**KNOW ALL MEN BY THESE PRESENTS** that on this __24__ day of

_____ May, 2024, John Felts does hereby **ASSIGN, BARGAIN, SELL AND**

**DELIVER** to Jennifer Felts, the following described property:

**One Hundred Percent (100%) Cumulative Membership Interest in WR Brewery Holdings, LLC.**

John Felts does hereby covenant that he is the lawful owner of said personal property; that it is free from all encumbrances; and that he has the right to assign the same.

**IN WITNESS WHEREOF**, John Felts has caused this Assignment to be executed.

_____
John Felts
Former Member, WR Brewery Holdings, LLC

**ACCEPTED ON BEHALF OF WR Brewery Holdings, LLC:**

_____
Jennifer Felts
New Member, WR Brewery Holdings, LLC

PLAINTIFF'S EXHIBIT

**F**

# FIRST AMENDED
## OPERATING AGREEMENT OF
## WR BREWERY HOLDINGS, LLC

### ARTICLE I
### GENERALLY

**Section 1. Adoption and Declaration.**

This Operating Agreement (the "Agreement") of WR Brewery Holdings, LLC (the "Company") is hereby adopted effective the 24 day of May, 2024, by Jennifer Felts (the "Member"). The Member is the sole member of the Company on the date hereof, following the assignment of the membership interest of the company from John Felts.

This Agreement constitutes Member's declaration of an "operating agreement" as defined in Section 347.015(13) of the Missouri Limited Liability Company Act, Sections 347.010 to 347.187 of the Revised Statutes of Missouri (the "Act") and is being adopted as required by Section 347.081 of the Act. It is the express intention of the Member that the Agreement is the operating agreement relating to the Company and shall govern, even when lawfully different than, the provisions of the Act or any other law or rule. To the extent any provision of the Agreement is prohibited or ineffective under the Act, the Agreement shall be considered amended to the least degree possible in order to make the Agreement effective under the Act. In the event the Act is subsequently amended or interpreted in such a way to make any provision of the Agreement that was formerly invalid valid, such provision shall be considered to be valid from the effective date of such interpretation or amendment.

**Section 2. Name.**

The name of the Company is WR Brewery Holdings, LLC, and all business of the Company shall be conducted under that name to the extent permitted by applicable law.

**Section 3. Effective Date.**

The Agreement shall become effective upon the date described above (the date of the filing and acceptance of the Company's Articles of Organization with the Secretary of State of Missouri).

**Section 4. Term.**

The duration of the Company shall be perpetual, unless the Company shall be dissolved and its affairs wound up in accordance with the Act or Agreement (the "Term").

**Section 5. Registered Agent and Office.**

The registered agent for the service of process and the registered office shall be that person and

location reflected in the Articles of Organization as filed in the office of the Secretary of State. The Member may, from time to time, change the registered agent or office through appropriate filings with the Secretary of State. In the event the registered agent ceases to act as such for any reason or the registered office shall change, the Member shall promptly designate a replacement registered agent or file a notice of change of address, as the case may be, and otherwise comply with the Act in this regard.

**Section 6. Company Property.**

All the rights, title, interests, and properties of any nature whatsoever, tangible and intangible, owned or hereafter acquired or received by the Company are herein the "Property," and such Property is and shall be held in the name of the Company.

**Section 7. Member's Authority.**

The Member shall have authority to act for, and assume obligations and responsibility on behalf of, the Company.

**Section 8. Principal Place of Business.**

The principal place of business of the Company shall be 505 W. Commercial Street, Springfield, MO 65803, or such other place or places as the Member shall designate in writing.

**ARTICLE II**
**MANAGEMENT**

There shall at all times be one manager ("Manager") of the company. The initial Manager shall be the Member and the Manager shall serve in that capacity until a successor shall be designated. The Manager shall be responsible for and shall have authority for conducting the ordinary and usual business and affairs of the Company (including, without limitation, leasing or licensing rights of use to the property) unless limited or otherwise provided by this Agreement.

**ARTICLE III**
**CAPITAL**

**Section 1. Contributions to Capital.**

The capital contributions of the Member on the books of the Company shall bear no interest except as otherwise provided herein or required by the Act and shall reflect the fair market value of all property contributed by the Member.

**Section 2. Capital Accounts.**

To the extent required, a capital account shall be established for the Member, and shall be maintained and adjusted in accordance with applicable tax or accounting principles.

## ARTICLE IV
## ALLOCATIONS, ACCOUNTING

**Section 1. Allocations.**

All profits, gains, losses, income, deductions, and credits shall be allocated to the Member.

**Section 2. Accounting.**

(a) The fiscal year of the Company shall be the calendar year.

(b) Books of account of the Company shall be kept and maintained at all times at the principal place of business of the Company.

**Section 3. Distributions.**

Distributions shall be made at such times, and in such amounts, as in the discretion of the Manager may be appropriate.

## ARTICLE V
## TRANSFER OF MEMBER INTEREST

The Member's interest in the Company can be gifted, sold, assigned, mortgaged, encumbered or otherwise transferred (including by a non-probate transfer on death provision stated in an interest certificate).

## ARTICLE VI
## DISSOLUTION AND WINDING UP

**Section 1. Dissolution.**

The Company shall be dissolved and its affairs wound up upon the first to occur of the following events:

(a) The written consent of the Member or her successor in interest; or

(b) Upon the death of the Member or her successor in interest.

**Section 2. Effect of Dissolution.**

Upon dissolution, the Company shall cease carrying on (as distinguished from the winding up of) the Company business, but the Company shall not be terminated. The Company shall continue until the winding up of the affairs is completed and articles of termination have been filed with the Secretary of State.

**Section 3. Winding Up and Certificate of Dissolution.**

The winding up of the Company shall be completed when all debts, liabilities, and obligations of the Company have been paid and discharged or reasonably adequate provision therefore has been made, and all of the remaining Property has been distributed. Upon the completion of winding up of the Company, articles of termination shall be delivered to the Secretary of State, which shall set forth the information required by the Act.

## ARTICLE VII
## DISTRIBUTION ON LIQUIDATION

In the event of the sale or other disposition of all or substantially all of the Property or the dissolution and termination of the Company for any other reason, the Company shall be dissolved and liquidated, and all of the Property shall be distributed as follows and in the following order of priority:

(a) All of the Property, if any, other than cash, shall be sold or collected and turned into cash as expeditiously as possible.

(b) All of the Company's debts, liabilities, and obligations (excluding any loans or advances by the Member) shall be paid in full or reserves therefor shall be set aside.

(c) All of the Company's debts, liabilities, and obligations to the Member shall be paid, but if the amount available therefor shall be insufficient, then *pro rata* on account thereof.

(d) Any amount remaining shall be distributed to the Member or her successor in interest.

## ARTICLE VIII
## GENERAL

**Section 1. Governing Law.**

This Agreement and the rights and obligations of the Member and the Member's successors and

assigns hereunder shall be interpreted, construed, and enforced in accordance with the laws of the State of Missouri.

### Section 2. Entire Agreement.

This Agreement contains the entire operating agreement with respect to the Company. No variations, modifications, or changes herein or hereof shall be binding unless set forth in a document duly executed by or on behalf of the Member or her successors and assigns.

### Section 3. Binding Agreement.

Subject to the restrictions on transfers and encumbrances set forth herein, this Agreement shall inure to the benefit of and be binding upon the Member and the Member's personal representative, successors, and assigns.

### Section 4. Rights of Creditors and Third Parties Under Company Agreement.

This Agreement is adopted and declared by the Member for the exclusive benefit of the Member, and the Member's personal representative, successors, and assigns. This Agreement is expressly not intended for the benefit of any creditor of the Company or any other person. Except and only to the extent provided by applicable statute, no such creditor or third party shall have any rights under this Agreement or any agreement between the Company and the Member with respect to any capital contribution or otherwise.

### Section 5. Transfer on Death

The Member may transfer the Member's interest in any way legally permitted at the Member's death. The Company agrees to accept and execute the transfer on death directions of any Member if executed in writing and delivered to the Manager prior to death. The beneficiary designations made by this agreement or any subsequent beneficial assignments effective at the death of transferor shall be subject to all of the provisions of the Non-Probate Transfers Law of Missouri (RSMo. Section 461.003, et seq.). A beneficial assignment of any member's interest at death shall be deemed delivered when executed and transmitted to any managers other than the transferor, or if transferor is the manager, by any means reasonably calculated to cause its delivery to said manager, including but not limited to, deposit in the U.S. mail with postage paid.

**IN WITNESS WHEREOF,** this Agreement is executed, adopted, and declared effective as of the date first above written.

_____

Jennifer Felts, Member
Being the Sole Member of WR Brewery
Holdings, LLC